CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

CHRISTINE CHEN (CABN 327581)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7291
FAX: (415) 436-7234
Christine.Chen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANGEL AGUILAR,<br><br>Defendant. | Case No. 3:26-CR-00232-CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: November 4, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 5, 17th Floor<br><br>Hon. Charles R. Breyer |

## I. INTRODUCTION

The defendant, Angel Aguilar, has pleaded guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). The offense is extraordinarily serious, involving the possession of hundreds of images and videos of children, including infants and toddlers, being sexually abused in sadistic and violent ways. The victims' statements underscore the lifelong suffering caused by individuals who consume this material. At the same time, the government acknowledges that this defendant presents some mitigating factors. For these reasons, and after careful evaluation of 18 U.S.C. § 3553(a) factors, the government recommends 51 months' imprisonment, followed by a five-year term of supervised release with strict conditions.

## II. BACKGROUND

### A. Offense Conduct

In 2025, FBI agents investigating a dark-web forum where users shared child sexual abuse material ("CSAM") and identified Mr. Aguilar as a participant. PSR ¶ 8. A search warrant executed at his residence on August 20, 2025, yielded a desktop computer and a cellular phone containing an exceptionally large volume of child pornography, including depictions of infants and toddlers being raped, bound, whipped, and penetrated with objects. *Id.* ¶¶ 8, 12, 13, 14. There were 794 CSAM photos and 17 videos on the phone, *id.* ¶ 12, and 578 videos on the computer totaling well over 24 hours of content, *id.* ¶ 13.

When confronted, Mr. Aguilar initially denied having CSAM. *Id.* ¶ 9. However, he eventually admitted to having CSAM once agents revealed to him that they had accessed his computer and found CSAM on it. *Id.* Mr. Aguilar then showed agents other dark web websites for CSAM and pulled up a dark web search engine that allowed him to search for CSAM. *Id.* ¶ 10.

### B. Victim Impact Statements

According to the National Center for Missing and Exploited Children ("NCMEC"), Mr. Aguilar possessed 141 image files and 146 video files that matched 65 known series of CSAM victims. *Id.* ¶ 17. Nine victims thus far have submitted impact statements, which are summarized here, and have requested a total of $64,500 in restitution:

1. Victim 1 (PSR ¶ 18(a))

   Victim 1 described persistent anxiety, panic attacks triggered by notifications that her images were viewed, fear of being recognized, impaired career prospects, and lifelong emotional harm. She reported withdrawing socially and experiencing continuing fear that individuals who have viewed her images may attempt to contact or harm her. She wrote that, "[t]he perpetuation of [her] abuse on the internet is and will always be a huge factor impacting my life." She has requested $10,000 in restitution.

2. Victim 2 (PSR ¶ 18(b))

   Victim 2's mother described dramatic changes in her daughter's personality, including the loss of confidence, nightmares, panic attacks, and the emotional burden of receiving

thousands of “victim notification” alerts documenting repeated circulation of her abuse images. The family’s home was also targeted and vandalized after online dissemination of Victim 2’s images. Victim 2 has requested $3,000 in restitution.

3. Victim 3 (PSR ¶ 18(c))

Her mother reported that Victim 3 now isolates herself, struggles developmentally, speaks to herself, dissociates, and has abandoned educational plans. It made Victim 3’s mother that this continues to destroy her daughter’s life and disrupt her future. Victim 3 has requested $8,000 in restitution.

4. Victim 4 (PSR ¶ 18(d))

Victim 4 wrote that she continues to suffer from fear, sleep disruption, headaches, diminished motivation, and severe trust issues. She expressed that her abuse “will never go away” and that she has lived with constant emotional pain and shame. She has requested $5,000 in restitution.

5. Victim 5 (PSR ¶ 18(e))

Victim 5 shared that she experiences ongoing flashbacks, medical complications triggered by stress, profound shame, and long-term relationship difficulties. She described years of loneliness and emotional darkness following the abuse and continues to feel retraumatized daily. She has requested $5,000 in restitution.

6. Victim 6 (PSR ¶ 18(f))

Victim 6 reported suffering from severe lifelong trauma, fear of leaving home, constant anxiety, and flashbacks. She likened the repeated viewing of her abuse images to a form of “murder” of her childhood self, writing “you child molesters and pedophiles who took it upon yourself to download, view, save and share my inappropriate pedophilia merchandise have taken part in murdering me. Yes, murder. I call it murder because you blatantly premediated your motive and actions against me.” She has requested $7,500 in restitution.

7. Victim 7 (PSR ¶ 18(g), (h))

The victim described lasting damage to her ability to form healthy relationships, constant revictimization through circulation of her images, and fear of being recognized. She wrote

that she was "revictimized every single time one of those images or videos is viewed, downloaded, or sent to another individual." Her mother detailed years of night terrors, stalking behavior by offenders, vandalism of their home, and forced relocation for safety. Victim 7 has requested $10,000 in restitution.

8. Victim 8 (PSR ¶ 18(i))

   Victim 8 reported panic attacks, nightmares, fear of being recognized, and daily emotional exhaustion from knowing that unknown men continue to view the worst moments of her life. She wrote, "Unlike other forms of exploitation, this one is never ending. Every day, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain." She has requested $10,000 in restitution.

9. Victim 9 (*see* Exhibit A)

   Victim 9 has experienced persistent psychological harm, including nightmares, paranoia, hypervigilance around men, difficulty trusting others, intrusive memories, distorted sexual boundaries, insomnia, and recurring suicidal ideation. She has lived with the continuous fear that people who have viewed her abuse material may recognize, contact, or stalk her. She has requested $6,000 in restitution.

**C. Procedural History**

On November 20, 2025, a criminal complaint was filed charging Mr. Aguilar with one count of possession of child pornography. *Id.* ¶ 1. He was arrested on December 3, 2025, and made his initial appearance on December 4, 2025. *Id.* ¶ 5. Mr. Aguilar has been on pre-trial release with conditions. *Id.* On July 1, 2026, Mr. Aguilar pleaded guilty to a one-count Information charging him with one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2), pursuant to a plea agreement. *Id.* ¶¶ 2–4. As part of the plea agreement, the government agreed to recommend a sentence of no higher than the low-end of the Guidelines range associated with a total offense level of 24, which is four levels below the Guidelines calculation, to be followed by five years of supervised release. *See* Dkt. 32.

## III. SENTENCING GUIDELINES CALCULATION

The parties and Probation agree on the following Guidelines calculation, *id.* ¶¶ 4, 21–34:

| | U.S.S.G. Section | Level/Points |
|---|---|---|
| Base Offense Level | 2G22(a)(1) | 18 |
| Specific Offense Characteristics | | |
| - Prepubescent or under 12 | 2G2.2(b)(2) | + 2 |
| - Sado-masochistic or abuse of an infant/toddler | 2G2.2(b)(4) | + 4 |
| - Use of a computer | 2G2.2(b)(6) | + 2 |
| - 600+ images | 2G2.2(b)(7)(D) | + 5 |
| Adjusted Offense Level | | 31 |
| Acceptance of Responsibility | | - 3 |
| Total offense level | | 28 |

The government further agrees with Probation that Mr. Aguilar's Criminal History Category is I. *Id.* ¶ 38. Thus, the Guidelines range is 78–97 months. *Id.* ¶ 66.

## IV. SENTENCING RECOMMENDATION

### A. Legal Standard

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence to protect the public from future crimes of the defendant;

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

**B. Recommended Sentence and Section 3553(a) Factors**

Probation has recommended that Mr. Aguilar be sentenced to a 48-month term of imprisonment to be followed by ten years of supervised release. Consistent with the parties' plea agreement, the government respectfully recommends a custodial sentence of 51 months of imprisonment and five years of supervised release. Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to provide deterrence, but also to account for relevant mitigating factors.

The most important factors in determining the sentence in this case are the nature and seriousness of Mr. Aguilar's offense. The harm caused by the defendant's conduct is profound. As the PSR documents, victims whose images he possessed continue to suffer severe, ongoing trauma, including panic attacks, fear of recognition, nightmares, and social-emotional impairment. A substantial custodial sentence is therefore warranted to reflect the violence and degradation depicted in the material, the defendant's extensive collection of CSAM (almost 1,500 videos and images), his deliberate search for increasingly graphic material, and the need for general deterrence in child-exploitation crimes.

The conduct in this case is unquestionably serious. Those who choose to possess CSAM cause significant harm to victims who suffered not only at the hands of their abusers when the images and videos were created, but repeatedly by those who view, possess, and distribute the images and videos of their abuse. Possession of such material perpetuates the victimization of the children depicted, and courts have repeatedly recognized the lasting trauma inflicted by demand-side offenses. The PSR includes powerful victim impact statements confirming the enduring psychological harm suffered by minor victims when CSAM is circulated. Of Mr. Aguilar's vast CSAM collection, law enforcement was able to identify victims in 141 image files and 146 video files, matching at least 65 known victims. Unfortunately, many victims remain unidentified.

However, the government recognizes that Mr. Aguilar has endured sexual abuse as a child himself and grew up with domestic violence. This trauma manifested in long-term mental-health

symptoms: seizures, inappropriate affect, aggression, suicidal ideation, and difficulty forming healthy relationships. He began mental-health treatment well before indictment, has engaged in counseling through pretrial services, and has shown substantial progress. The PSR notes that he views treatment as essential and is "thankful for his arrest because he was desperate for help." PSR ¶ 55.

To be clear, these tribulations do not excuse his conduct. They do, however, inform the government's recommendation to a sentence below the Guidelines range. Mr. Aguilar also has no criminal history, and he swiftly accepted responsibility for his conduct.

Nevertheless, given the sheer quantity and grave nature of the contents of the CSAM he possessed, Mr. Aguilar should be sentenced to 51 months in prison. For offenses involving the sexual abuse of children, the consequences must be serious and certain to have a chance at deterring Mr. Aguilar and others similarly situated from engaging in conduct that causes devasting harm to the child victims. A 51-month sentence affords just punishment and promotes respect for the law and reflects the mitigating circumstances without discounting the egregious harm of the offense.

The government's recommendation marks a significant downward variance given Mr. Aguilar's history and characteristics above below. According to the Judiciary Sentencing INformation data, defendants with the same offense level and Criminal History Category as the Defendant have been sentenced to: (i) an average term imprisonment of 56 months, and (ii) a median term of imprisonment of 60 months. PSR ¶ 83. Accordingly, the government's recommendation would avoid unwarranted sentencing disparities.

The government also supports the imposition of a lengthy term of supervised release of five years, along with sex-offender-specific conditions, computer-monitoring restrictions, and treatment requirements consistent with those outlined in the PSR. Such conditions are necessary to protect the public, prevent recidivism, ensure compliance with treatment, and provide structure and monitoring during the defendant's reintegration.

## V. CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Mr. Aguilar to 51 months of imprisonment and five years of supervised release with the requested special conditions, impose a $100 special assessment, order the forfeiture of one black PG V30+ phone and one Desktop

GE Force RTX 2M 750 (model number: 2080T), and set a restitution hearing to take place within 90 days pursuant to 18 U.S.C. § 3664(d)(5).[1]

DATED: October 28, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
CHRISTINE CHEN
Assistant United States Attorney

[1] Ninety days after the sentencing hearing is February 2, 2027.